Grace **AZNAVORIAN**, Individually (and on behalf of all other aged, blind or disabled persons similarly situated), Plaintiff,

v.

Joseph A. **CALIFANO**, Secretary of Health, Education, and Welfare, Individually and in his official capacity, Defendant.

Civ. No. 75–1103–GT.

United States District Court,
S. D. California.

Aug. 12, 1977.

Order—Aug. 23, 1977.

Peter A. Schey, Legal Aid Foundation, Los Angeles, Cal., Ian Fan and Charles H. Wolfinger, Jr., Legal Aid Society of San Diego, San Diego, Cal., Dorothy T. Lang, Western Center on Law and Poverty, Los Angeles, Cal., Ralph S. Abascal, Victor Harris, California Rural Legal Assistance, San Francisco, Cal., Philip M. Gassel, Legal Services for the Elderly Poor, New York City, for plaintiff.

Terry J. Knoepp, U. S. Atty., D. Michael Waltz, Asst. U. S. Atty., San Diego, Cal., for defendant.

## OPINION

GORDON THOMPSON, Jr., District Judge.

## I. INTRODUCTION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3),[1] plaintiff seeks review of a final decision, dated September 26, 1975, of the Secretary of Health, Education and Welfare, terminating her Supplemental Security Income benefits for the months of August and September, 1974, pursuant to Social Security Act section 1611(f), 42 U.S.C. § 1382(f). Plaintiff Aznavorian sought to have this action maintained as a class action pursuant to Rule 23(a) and (b)(2), Federal Rules of Civil Procedure. No facts are in dispute and plaintiff's sole contention is that Section 1611(f) is unconstitutional as being violative of her due process and equal protection rights because it penalized her right of international travel in violation of the Fifth Amendment to the United States Constitution. Section 1611(f) provides as follows:

> Notwithstanding any other provision of this title, no individual shall be considered an eligible individual for purposes of this title for any month during all of which such individual is outside the United States . . .
>
> For purposes of the preceding sentence, after an individual has been outside the United States for any period of 30 consecutive days, he shall be treated as remaining outside the United States until he has been in the United States for a period of 30 consecutive days.

The statute creates two classes of equally needy Supplemental Security Income (SSI) recipients, indistinguishable from each other, except that one class has recently traveled outside the United States for more than one month. Because section 1382(f) *conclusively* presumes that traveling class members have abandoned their residence in the United States, the statute terminates

their SSI benefits during any calendar month they are outside the country and for the first thirty days following their return.

## II. FACTS

The uncontested facts in this case are as follows: On July 21, 1974, plaintiff Aznavorian, a United States citizen, resident of San Diego County, and an eligible recipient of Supplemental Security Income benefits, left the United States for health reasons and proceeded to Guadalajara, Mexico, where she sought medical attention. At the time of her departure, she did not intend to remain outside of the United States for more than one month.

While in Mexico, plaintiff Aznavorian became ill and she was unable to return to the United States until September 1, 1974. No evidence indicates that she ever intended to abandon her residence in the United States. As a result of this brief departure, defendant Secretary terminated plaintiff from the Supplemental Security Income program and she was found to be ineligible for any benefits during the months of August and September, 1974, pursuant to Section 1611(f) of the Social Security Act.

There are two parties seeking to intervene. Intervenor Anna Tolstick is an 80-year-old widow who has been residing in New York City, New York, since 1921. Intervenor Tolstick is a recipient of Supplemental Security Income who wishes to visit a sister in Ukraine, U.S.S.R., once more before she dies. Mrs. Tolstick would like to travel outside the United States for two months. However, defendant Secretary has advised her by letter that she would automatically lose her SSI benefits during the planned trip and for one month after she returned pursuant to Section 1611(f) of the Act. For that reason, she has not taken her trip and has remained in the United States.

Intervenor Betsabe Rivas, an 80-year-old widow residing in New York City, New

---

1. While plaintiff's complaint also sought to invoke additional jurisdiction pursuant to 28 U.S.C. § 1361, injunctive relief, and a three-judge court pursuant to 28 U.S.C. §§ 2282 and 2284, plaintiff, by way of stipulation, withdrew without prejudice these additional allegations of jurisdiction.

York, is in almost the identical situation as Intervenor Tolstick. She is an SSI recipient who wishes to make a last visit to her family in Cali, Columbia. She also received a letter from defendant Secretary indicating that her benefits would be terminated pursuant to Section 1611(f) if she undertook her planned travel abroad. For that reason, she has remained in the United States.

The Court has before it defendant Secretary's Motion for Summary Judgment, plaintiffs' Motion for Class Certification, and a Motion to Intervene as Plaintiffs brought by Mrs. Tolstick and Mrs. Rivas.

## III. MOTIONS FOR CLASS CERTIFICATION AND FOR CLARIFICATION

Plaintiff Aznavorian has filed this action on behalf of herself and all similarly situated persons pursuant to Rule 23(a) and (b)(2), Federal Rules of Civil Procedure. She defines her class as consisting of:

> all individuals eligible for Supplemental Security Income who had such SSI denied, terminated or interrupted pursuant to an initial written determination, an administrative reconsideration, an administrative hearing, or an Appeals Council review, based solely on 42 U.S.C. § 1382(f), on September 26, 1975, or at any time thereafter.

As defined, all class members are properly before this Court pursuant to 42 U.S.C. § 405(g) as they have all received a "final decision" from defendant Secretary.[2]

Defendant Secretary contends class relief is not available under section 405(g). The Supreme Court in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), did not foreclose, but to the contrary, implied that class relief is available to a court exercising section 405(g) jurisdiction. *Salfi* denied class relief not because anything in section 405(g) precludes this

form of relief, but because the class was improperly formed in the specific setting of that case.[3] 422 U.S. at 764, 95 S.Ct. 2457. The Court in *Salfi* recognized that where the sole challenge is to the constitutionality of a statutory requirement, something over which the defendant Secretary has no jurisdiction, further exhaustion beyond an initial determination "would not merely be futile . . . but would also be a commitment of administrative resources unsupported by any administrative or judicial interest." *Weinberger v. Salfi, supra,* 422 U.S. at 766, 95 S.Ct. at 2467.

In *Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976), the Supreme Court held:

> *Salfi* identified several conditions which must be satisfied in order to obtain judicial review under § 405(g). Of these, the requirement that there be a final decision by the Secretary after a hearing was regarded as "central to the requisite grant of subject-matter jurisdiction . . .." 422 U.S. at 764, 95 S.Ct. at 2466[9] (Footnote omitted). Implicit in *Salfi,* however, is the principle that this condition consists of two elements, only one of which is purely "jurisdictional" in the sense that it cannot be "waived" by the Secretary in a particular case. The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The non-waivable element is the requirement that a claim for benefits shall have been presented to the Secretary. Absent such a claim there can be no "decision" of any type. And some decision by the Secretary is clearly required by the statute.

The "waivable [jurisdictional] element", that a "final decision" be rendered to satisfy the statutory exhaustion requirement, in some cases will not be left to the "deference

---

2. The relevant section of the Act, Section 205(g), 42 U.S.C. § 405(g), reads as follows:

 Any individual, after any final decision of the Secretary made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . .

3. Class relief was denied in *Salfi* because unnamed members of the class had not satisfied one of the three statutory requirements for judicial review of an adverse decision by the Secretary. The class as defined in the instant case properly accounts for the exhaustion concerns embodied in § 405(g) and discussed in *Salfi.*

[of] the agency's judgment . . . ." *Id.,* at 330, 96 S.Ct. 893, 899. The plaintiff in *Eldridge* conceded that he did not exhaust the administrative procedures provided by the Secretary. *Id.,* at 330, 96 S.Ct. 893.

The fact that full exhaustion of administrative remedies is not required when the plaintiffs challenge denials and/or terminations solely on alleged statutory or regulatory constitutional infirmities was again recognized in *Mathews v. Diaz,* 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976), and *Norton v. Mathews,* 427 U.S. 524, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976). The Court noted in *Diaz:*

> None of the appellees completely exhausted available avenues for administrative review. Nevertheless, the Secretary acknowledged that the applications of Diaz and Clara raised no disputed issues of fact and therefore the interlocutory denials of their applications should be treated as final for the purpose of this litigation. *Id.,* 426 U.S., at 72, 96 S.Ct., at 1888.

*Cf., Weinberger v. Wiesenfeld,* 420 U.S. 636, 641 n. 8, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975). The decisions in *Jimenez v. Weinberger,* 523 F.2d 689, 695–696, n. 10 (7th Cir. 1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976), and *Tatum v. Mathews,* 541 F.2d 161, 163–164 (6th Cir. 1976), interpret the "final decision" requirement consistent with *Eldridge* and *Salfi* as requiring no more than an initial adverse decision. *Cf., Ellison v. Califano,* 546 F.2d 1162, 1164 (5th Cir. 1977). The plaintiff class herein is defined as including only those persons who have received an explicit decision denying, interrupting or terminating their benefits based solely on the terms of the challenged statute.[4]

**A.** *The Requirements of Rule 23(a) Are Satisfied*

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Defendant Secretary's responses to plaintiff's interrogatories have provided information clearly resolving the "numerosity" issue in favor of class certification. Defendant stated that he did not have available the precise total number of class members whose SSI benefits were denied, interrupted or suspended solely pursuant to § 1611(f). He did submit an approximation indicating that between 4,823 and 9,195 persons were deprived of their SSI benefits per month from February to October, 1976. Numerosity of the class makes joinder of all members impracticable.

There are questions of law or fact common to the class satisfying Rule 23(a)(2). The primary issue presented by plaintiff's challenge herein is whether Section 1611(f) violates the plaintiff's Fifth Amendment right to travel. The challenged statute denies benefits to plaintiff and her class on a common factual basis— their absence from the United States for more than 30 consecutive days and/or one calendar month. The requirements of Rule 23(a)(2), requiring common questions of law or fact, are therefore satisfied. *Jimenez v. Weinberger, supra,* 523 F.2d at 699.

The requirement of Rule 23(a)(3), that the claims of the named plaintiff be typical of the claims of the class, are likewise satisfied. *Gonzales v. Cassidy,* 474 F.2d 67, 71 n. 7 (5th Cir. 1973). All members of the class will benefit by the suit and the requirement of typicality has been met. *Eisen v. Carlisle and Jacquelin,* 391 F.2d 555 (2d Cir. 1968), *aff'd in part,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

Finally, the fourth requirement of Rule 23(a), that the "representative parties will fairly and adequately protect the interests of the class", is satisfied. Plaintiff's counsel are employed by various legal services programs and are experienced in Social Security and Supplemental Security litigation and federal court class actions. The plaintiff does not have interests antagonis-

---

4. Defendant Secretary additionally concedes that "[i]f, indeed class actions are possible under the Social Security Act . . . then defendant has no objection to the definition of the proposed class." [Def.'s Br. in Oppos. to Plaintiff's Motion for Class Action Certification, at p. 1.]

tic to the class since they share identical interests. *See Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3rd Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

### B. *The Requirements of Rule 23(b) Are Satisfied*

■ The class further satisfies the requirements of Rule 23(b)(2), in that defendant Secretary applies the challenged statute in a similar manner to the entire class. Rule 23(b)(2) is applicable when the party opposing the class has acted or refused to act on grounds generally applicable to the class.

The United States Court of Appeals for the Ninth Circuit in a recent decision provided additional guidance on the question whether notice must be given to identifiable class members in a Rule 23(b)(2) class action. *Souza v. Scalone*, 563 F.2d 385 (9th Cir. 1977).[5] The court in *Souza* indicated that:

> Only when the purposes in providing class members an opportunity [1] to signify whether representation by named plaintiffs is fair and adequate or [2] to intervene to present additional claims or [3] otherwise come into the action to, for example, submit views as amici curiae, are in need of being served, does due process require some sort of notice to absent members of a [Rule 23] (b)(2) class.

The *Elliott* Court determined that none of these "special circumstances" existed in challenging the constitutionality of Social Security recoupment procedures. The Ninth Circuit therefore affirmed the certification of a nationwide class without providing prejudgment notice. The same is true here.

■ The plaintiff is represented by skilled and experienced counsel who are familiar with Social Security class actions. There is no significant factual dispute and

the only issues raised are constitutional. Additional claims are not needed; they would only complicate and protract this matter. The plaintiff is typical of the class and additional plaintiffs are unnecessary. Lastly, the constitutional issues have been thoroughly briefed and amici curiae argument is not needed. For the foregoing reasons, prejudgment notice to absent class members is not required. The postjudgment notice to absent class members is not required. The postjudgment notice directed in the class relief order adequately insures that all absent class members will receive complete protection of their claims for SSI benefits.

### C. *The Class is Not Overbroad*

■ In defendant's response to plaintiff's proposed order granting class relief, the defendant for the first time raises objection to the venue for a nationwide class. This action is appropriately a matter calling for certification of a nationwide class. More importantly, objections to improper venue must be raised in the first responsive pleading, or they are waived. Federal Rules of Civil Procedure 8(c), 12(b), 12(h)(1). The venue provision of § 405(g) is no exception; it can be waived if not timely raised. *Weinberger v. Salfi, supra*, 422 U.S. at 764, 95 S.Ct. 2457.

The complaint was filed on November 25, 1975. The Secretary answered on February 20, 1976, without raising any venue objections. There were a number of subsequent motions and hearings prior to the Secretary contending for the first time in his March 31, 1977 response that venue is improper for any class member outside this judicial district. He has waited too long to raise this issue; his objection has been waived.

### IV. MOTION TO INTERVENE

■ The applications of Intervenors Tolstick and Rivas are hereby denied, without prejudice, because they have not

---

5. The Court in *Souza* set forth the criteria, originally adopted in *Elliott v. Weinberger*, 564 F.2d 1219 (9th Cir. 1975), *vacated on other grounds*, 425 U.S. 987, 96 S.Ct. 2197, 48 L.Ed.2d 813 (1976), for determining the circumstances under which notice to class members is necessary to assure conformity to the requirements of due process.

presented a "claim" to the Secretary, following loss of their benefits. This is a non-waivable requirement. *Mathews v. Eldridge, supra,* 424 U.S. at 328, 96 S.Ct. 893. Intervenors, both SSI recipients, communicated in writing with defendant Secretary concerning their need for continued receipt of their SSI benefits while traveling abroad for two months. They received written responses indicating that if they took their planned trips their SSI benefits would be suspended or terminated due to application of § 1611(f). This does not constitute a "claim." They have not yet been injured by application of § 1611(f).

Intervenors renewed their motion for intervention alleging that they had already suffered constitutional injuries because of defendant's threatened enforcement of § 1611(f) and that their claims presented actual controversies appropriate for declaratory judgment. They alleged jurisdiction upon 5 U.S.C. §§ 701–706 (Administrative Procedure Act), 28 U.S.C. §§ 1343(4) or 1331, in addition to 42 U.S.C. § 405(g). In their renewed applications intervenors alleged that they had not taken their planned trips due to the defendant's threatened termination of their SSI benefits. They further allege that defendant Secretary's stipulation, that intervenors have no available administrative remedies prior to an actual suspension of benefits pursuant to § 1611(f), coupled with the earlier written responses of defendant as to the threatened loss of benefits, constitutes a "final decision" for § 405(g) jurisdiction.

The position of intervenors has not changed since their initial applications for intervention. They have not yet submitted a "claim", nor have they been injured by application of § 1611(f), and this court therefore lacks subject matter jurisdiction.

## V. MOTION FOR SUMMARY JUDGMENT AND RECONSIDERATION

█ It is time to turn to the merits of this action. The effect of § 1611(f) is to create a conclusive presumption of abandonment of United States residency upon any departure exceeding one calendar month. The section further precludes an applicant or recipient from reestablishing residency until he has been back in the United States for 30 consecutive days following a trip outside of the United States for 30 consecutive days.[6] United States residency is a requirement for SSI eligibility.[7]

By the very terms of § 1611(f), a presumption of abandonment of residency is created for any departure from the United States which last one calendar month or longer. A person traveling outside of the United States for the prescribed period of time loses SSI benefits regardless of the intent of the traveler to maintain a United States residence, the reasons for remaining outside the country for more than the prescribed period, or existence of evidence showing that United States residency has not in fact been abandoned.

The fundamental attack directed at § 1611(f) by the plaintiff concerns the constitutional right to travel. The first issue to be confronted is the test to be applied in assessing the constitutionality of the statute.

█ The right to travel beyond the frontiers of the United States is a basic constitutional right. *Kent v. Dulles,* 357 U.S. 116, 125, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958); *Aptheker v. Sec. of State,* 378 U.S. 500, 514, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); *Zemel v. Rusk,* 381 U.S. 1, 14, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965); *United States v. Davis,* 482 F.2d 893, 912 (9th Cir.

---

**6.** Plaintiff initially argued that the second portion of § 1611(f) was only triggered after a recipient had been outside of the United States for one calendar month. The court finds that the 30 day residency requirement contained in the second portion of § 1611(f) applies to applicants and recipients, and operates independently of the abandonment of residency provision contained in the first portion of § 1611(f). However, the issue here concerns those already on SSI and whether there is a sufficient reason to have them cut off from those benefits upon travel abroad that exceeds one calendar month.

**7.** 42 U.S.C. §§ 1382(a)(1), (a)(2); § 1382c(a)(1)(B).

1973). Defendant Secretary urges that "[t]he proper standard of review in a case involving the right to travel abroad is the 'rational basis test.'" Defendant argues that the "rational basis test" has traditionally been applied to legislation in the area of social welfare. *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); *Geduldig v. Aiello,* 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974). However, these cases are not controlling because § 1611(f) implicates constitutionally protected conduct and must, therefore, be measured against a test more exacting than the "rational basis" standard urged by defendant.

While plaintiff Aznavorian was not deterred from traveling, she was, by the later loss of the funds by which she obtains the basic necessities of life, penalized for exercising her constitutional right to international travel. *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 259, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974). The Supreme Court has specifically noted that judicial scrutiny is triggered by a penalizing of the right to travel, regardless of whether or not travel was actually deterred. *Dunn v. Blumstein,* 405 U.S. 330, 339–340, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). SSI benefits provide the means for purchasing the "basic necessities of life," and, as noted in *Memorial Hospital v. Maricopa County, supra,* 415 U.S. at 259, 94 S.Ct. at 1082, "[i]n *Shapiro,* the Court found denial of the basic 'necessities of life' to be a penalty."

Right to travel *interstate* has been recognized as a fundamental right necessitating application of the "strict scrutiny" test. *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Defendant contends that the right to travel abroad has not been given the same degree of protection and directs this court's attention to the concurring opinion of Justice Stewart in *Shapiro v. Thompson, id.* at 643 n. 1, 89 S.Ct. at 1336:

By contrast, the "right" of international travel has been considered to be more than an aspect of the "liberty" protected by the Due Process Clause of the Fifth Amendment. *Kent v. Dulles,* 357 U.S. 116, 125, [78 S.Ct. 1113, 1118, 2 L.Ed.2d 1204]; *Aptheker v. Secretary of State,* 378 U.S. 500, 505–506, [84 S.Ct. 1659, 1663, 12 L.Ed.2d 992]. As such, this "right," the Court has held, can be regulated within the bounds of due process. *Zemel v. Rusk,* 381 U.S. 1, [85 S.Ct. 1271, 14 L.Ed.2d 179].

The Supreme Court has not clearly spoken regarding the degree of protection to be afforded international travel. Lower court decisions have indicated that the right to travel abroad is a fundamental right. *United States v. Davis, supra,* 482 F.2d at 912; *see Gautier Torres v. Mathews,* 426 F.Supp. 1106 (D. Puerto Rico, 1977).[8]

In *Kent v. Dulles, supra,* 357 U.S. at 126, 78 S.Ct. at 1118, the Court stated:

Freedom of movement across frontiers in either direction and inside frontiers as well, was a part of our heritage. Travel abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values.

Personal rights cannot simply be recognized as "fundamental" or not "fundamental." It is not that simple; obviously some rights are more significant than others. The right to travel abroad is certainly a very important right. However, it should not be placed on equal footing with the right to travel interstate. International travel has traditionally been subject to more controls than has interstate travel. For example, a passport must normally be obtained for travel to most countries and in some instances the government has legitimately imposed complete restriction on travel to certain countries for reasons of national security. On the other hand, the

---

**8.** The *Gautier Torres* case was decided by a three-judge panel and holds that the application of § 1611(f) to the plaintiff in that case unconstitutionally violated the plaintiff's fundamental right to travel.

Supreme Court has certainly implied that infringement of this travel right is deserving of much closer scrutiny than that given under the "rational basis" test. *Kent v. Dulles, supra; Aptheker v. Sec. of State, supra; Zemel v. Rusk, supra.*

The protection afforded various rights is a matter of degree. As noted above, the right to international travel is a basic constitutional right and the interest of the government in restricting such travel must be "legitimate and substantial" and cannot be pursued by means that broadly stifle fundamental personal liberties when the ends can be more narrowly achieved. *Aptheker v. Sec. of State, supra,* 378 U.S. at 508, 84 S.Ct. 1659. The Supreme Court has utilized a middle ground, or middle standard, in dealing with classifications premised on sex. *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). The standard adopted in the *Reed* case is appropriate in the instant case where a basic right is involved, but it is not within the class of rights given full "strict scrutiny" protection. The statute must bear a fair and substantial relationship in fact to the governmental purposes that it seeks to achieve. *Reed v. Reed,* supra, at 76, 92 S.Ct. 251.[9]

■ The purpose of the statute here challenged, according to defendant Secretary, is to avoid payment of SSI benefits to nonresidents of the country. Plaintiff con-cedes, and the court agrees, that this is a legitimate purpose. *Shapiro v. Thompson, supra; Memorial Hospital v. Maricopa County, supra.* However, while the objective of limiting SSI payments to bona fide residents may be laudable, the court finds that the means adopted to effectuate the end do not bear a fair and substantial relationship to the purpose sought to be achieved. As noted by the Supreme Court in *Aptheker,* even if the governmental purpose is both legitimate and substantial, that purpose "cannot be pursued by means that broadly stifle fundamental personal liberties when . . . less drastic means [are available] for achieving the same basic purpose." *Aptheker v. Sec. of State, supra,* 378 U.S. at 508, 84 S.Ct. at 1665.

■ Defendant Secretary has alleged that § 1611(f) prevents the fraudulent receipt of SSI by non-residents by establishing an administratively convenient, objective test of residency. Congress has a valid interest in preserving the limited fiscal resources available for SSI payments. However, administrative convenience alone is not a substantial enough reason to justify penalizing the basic constitutional right to international travel. *Schlesinger v. Ballard,* 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975). The Supreme Court in *Memorial Hospital v. Maricopa County, supra,* 415 U.S. at 267, 94 S.Ct. at 1086, rejected the government's argument that the waiting

---

9. The court recognizes that the Supreme Court in *Reed* professed to only be applying a rational basis review. But subsequent Supreme Court cases applying *Reed* have borne out the view of legal commentators that *Reed* established a "middle ground" standard of review for sex classifications falling somewhere between rational basis and strict scrutiny. *Frontiero v. Richardson,* 411 U.S. 677, 690, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Stanton v. Stanton,* 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975); *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). *See generally* Gunther, The Supreme Court, 1971 Term, Forward: In search of Evolving Doctrine on a Changing Court; A Model for a Newer Equal Protection, 86 Harv.L.Rev. 1 (1972).

The choice of the *Reed* standard finds support in the *Aptheker* right to international travel case, in which the Supreme Court appears to have foreshadowed the adoption of a middle ground test when it quoted from the criteria enunciated in *Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960):

[E]ven though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. The breadth of legislative abridgment must be viewed in the light of less drastic means for achieving the same basic purpose.

The *Aptheker* court went on to state:

At the same time the Constitution requires that the powers of government "must be so exercised as not, in attaining a permissible end, unduly to infringe" a constitutionally protected freedom. *Cantwell v. Connecticut, supra,* 310 U.S. 296, at 304, 60 S.Ct. 900, 84 L.Ed. 1213. *Id.,* 378 U.S. at 509, 84 S.Ct. at 1665.

period was a "convenient rule of thumb to determine bona fide residence." *See also Reed v. Reed, supra,* 404 U.S. at 76, 92 S.Ct. 251; *Shapiro v. Thompson, supra,* 394 U.S. at 636, 89 S.Ct. 1322.

Despite its penalizing effect, § 1611(f) does not bear a fair and substantial relationship to its purpose of preventing fraud. As noted by the Supreme Court in *Maricopa County,* in response to a governmental claim that the durational residency requirement prevents fraud, the dishonest applicant/recipient could just as easily swear to having fulfilled the requirement as not. 415 U.S. at 268, 94 S.Ct. 1076. Defendant here claims, maybe correctly, that certain SSI recipients/applicants will not be honest about their residency and, therefore, an objective test is required. Without some bright-line rule, the defendant argues, a hearing on the facts would have to be made in each case. But a recipient/applicant could just as easily be dishonest in providing information required to apply this objective test. The fraud prevention aspect of § 1611(f) can further be defeated by the recipient simply entering the United States for one day during the calendar month or thirty consecutive day period that would otherwise trigger a suspension of benefits. 20 C.F.R. 416.325.

A legitimate governmental purpose cannot be pursued by means that broadly stifle the right to travel internationally when there are effective and less drastic means available. The means must be considered in light of the purpose of the SSI program. The purpose is to provide benefits to the elderly, the blind, and the totally disabled based on a sympathetic understanding of the needs of the helpless. *Cardinale v. Mathews,* 399 F.Supp. 1163, 1164 (D.D.C. 1975).

Less drastic means are available and are employed to determine fraudulent claims for benefits. Other sections within the Social Security Act have been established for the specific purpose of preventing fraud. *See, e. g.,* 42 U.S.C. § 1383(e)(1)(B) (requiring verification of information received from an applicant/recipient); 42 U.S.C. § 1382(e)(3) (requiring the monitoring of all recipients); 42 U.S.C. § 1383(b) (requiring repayment to the program of overpayments received by recipients); and, 42 U.S.C. § 1383a (delineating penalties for various fraudulent acts leading to the wrongful receipt of benefits). "[L]ess drastic means are available, and are employed," to minimize the hazard of fraud. *Shapiro v. Thompson, supra,* 394 U.S. at 637, 89 S.Ct. at 1333; *Aptheker v. Secretary of State, supra,* 378 U.S. at 508, 84 S.Ct. 1659.

Section 1611(f) does not bear a fair and substantial relationship to its avowed purpose of limiting SSI payments to bona fide residents of the United States. The requirement of residency, separately established by 42 U.S.C. § 1382c(a)(1)(B), *supra,* and the conclusive loss of residency and subsequent 30-day waiting period required by § 1611(f) to regain residency, are "distinct and independent prerequisites for assistance." *Shapiro v. Thompson, supra,* 394 U.S. at 636, 89 S.Ct. at 1332. Defendant concedes that he maintains no statistics to substantiate his assertion that the one month or 30-day travel period is substantially related in fact to abandonment or establishment of residency.

Utilizing objective factors, such as continued ownership or rental of a home, continued employment in the United States, membership in organizations, and the purpose for the trip, would be far more effective in avoiding sham residency claims than relying solely on the recipient's or applicant's assertions concerning the lengths of time spent in or out of the country. Defendant already employs such a multi-factor residence test in making initial determinations of residency in processing SSI applications.[10] In short, "[L]ess drastic means are available, and are [or can be] em-

---

10. As noted in the SSI Claims Manual, Section A2101, "a person becomes a resident when he arrives in one of the fifty states . . . with the intent to establish his home there . . . .

the intent may be inferred from such actions as arranging for rental or purchase of a dwelling . . . ."

ployed," to minimize fraud and ensure that SSI is not paid to non-residents of the United States. *Shapiro v. Thompson, supra*, 394 U.S. at 637, 89 S.Ct. at 1333; *Aptheker v. Sec. of State, supra*, 378 U.S. at 508, 84 S.Ct. 1659.

Defendant concedes that § 1611(f) creates two classes of needy persons, indistinguishable from each other except that one has remained in the United States, while the other has been outside of the United States for one month. Recipients of SSI benefits are forced to abandon a constitutional right to travel that non-recipients retain without penalty. As already noted, the court finds that § 1611(f) does not bear a fair and substantial relationship to the governmental purpose of preventing SSI payments to nonresidents. The blanket and conclusive exclusion of recipients and applicants who travel for 30 days or more from the SSI program is not fairly and substantially related to the prevention of false residency claims. The section, therefore, violates the equal protection rights of those SSI recipients who are penalized by its terms. *Jimenez v. Weinberger*, 417 U.S. 628, 636, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974).[11]

For all of the above reasons the Court finds that § 1611(f) imposes an unconstitutional infringement on plaintiff's right to travel outside of the United States. The Court finds that denial of SSI benefits to plaintiff during the time that she was outside of the United States and during the first 30 consecutive days following her return violated her Fifth Amendment right to equal protection and due process of law.[12]

**Defendants' Motion for Reconsideration**

Following oral rulings and comments of this court, defendant Secretary filed a Motion for Reconsideration in which he largely reiterated his prior arguments that the proper test for constitutionality of § 1611(f) is the "rational basis" test. *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Defendant also argues that an SSI recipient abroad may encounter circumstances that change his eligibility status.[13] Finally defendant argues that the 30-day residency requirement activated upon a person's return to the United States "allows a stabilization period for income and resources following an extended time out of the United States." [Supplemental Memorandum in Support of Motion for Summary Judgment, at p. 12.]

*Sosna* distinguished *Shapiro v. Thompson, supra*, and *Memorial Hospital v. Maricopa County, supra*, stating that, unlike in *Sosna*, there "the durational residency requirements . . . were justified on the basis of budgetary or record-keeping considerations which were held insufficient to outweigh the constitutional claims of the individuals." *Sosna v. Iowa, supra*, 419 U.S. at 406, 95 S.Ct. at 561. Furthermore, in *Sosna* the Court found that important considerations, other than "administrative convenience," allowed the state to require that a person have a modicum of attachment to the State. *Id.*, at 406–407, 95 S.Ct. 553. Finally, the challenged statute in *Sosna* did

---

**11.** It is conceded by defendant that the Equal Protection clause of the Fourteenth Amendment finds similar life in the Fifth Amendment due process guarantee. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

**12.** Defendant admits that "Section 1611(f) of the Act challenged by plaintiff does, indeed, create an irrebuttable presumption." Plaintiff Aznavorian argues that Section 1611(f) "indiscriminately excludes plainly relevant considerations" (*Aptheker v. Secretary of State, supra*, 378 U.S. at 514, 84 S.Ct. at 1668) and thereby creates an inaccurate conclusive presumption of nonresidency amounting to a violation of her due process rights under the Fifth Amendment. Having found that § 1611(f) is unconstitutional as an undue infringement on the international

right to travel and that it violates the equal protection rights of that category of SSI recipients affected by its terms, the court finds it unnecessary to reach the conclusive presumption argument presented by plaintiff.

**13.** Examples of such changes in eligibility include: 1) Recipient living in the house of another and receiving in kind income in the form of support and maintenance results in an automatic one-third reduction in monthly benefits (42 U.S.C. § 1382(a)(2)(A)); 2) Gifts received by the recipient may effect eligibility (70 C.F.R. §§ 416.1136 and 416.1157); 3) Certain forms of income in specified amounts affect eligibility (42 U.S.C. § 1382a).

not act as a penalty. It merely delayed the exercise of interests in marriage/divorce. *Sosna* therefore does not provide authority for the application of the traditional "rational basis" test in this case.

Plaintiff's class is made up of persons who have traveled but who retain their residence in the United States. All of the reporting and verification requirements of the Social Security Act remain intact and available whether or not a recipient or applicant decides to travel abroad.

Defendant contends that the multi-factor residence test [14] will not work when an individual is traveling outside the United States. The defendant Secretary asks what it proves regarding residency if someone still retains a dwelling in the United States; they could still be residing outside the United States. Defendant is painting an unrealistic picture. These benefits go to needy and disabled people; they are not the type of people who can maintain local residence for the sole purpose of receiving SSI benefits while actually living abroad.

Further, defendant already maintains a complete system for administering SSI benefits in almost every country of the world. Social Security Claims Manual §§ 3608–3663. This system could apply to SSI. However, the need to contact recipients in foreign countries will not arise in most cases, since SSI recipients will report their travel plans to defendant before they leave the United States if they hope to continue to receive their checks while traveling. Only recipients abroad too long might warrant a foreign investigation.

Finally, defendant argues that the 30-day residency requirement provides a "stabilization period" for income and resources following a trip abroad. Once again, mere administrative convenience cannot justify the penalizing effect of § 1611(f). *Shapiro v. Thompson, supra; Memorial Hospital v. Maricopa County, supra.* The burden of

proof remains on the recipient/applicant to establish eligibility and produce documentary evidence when required.[15]

The defendant's arguments presented for reconsideration are not persuasive.

## VI. RELIEF

In further hearings held on April 11, 1977, concerning the nature of the order granting class relief, defendant Secretary contended that the judgment of this court should not be applied retroactively for two reasons: 1) Under the traditional retroactivity test, there can only be prospective application; 2) Retroactivity is barred by sovereign immunity.

### A. *Retroactivity Under Chevron Oil v. Huson*

Defendant asserts that based on the retroactivity criteria set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), any remedy ordered by this court should have prospective application only. He also cites *Tatum v. Mathews*, 541 F.2d 161 (6th Cir. 1976), and *Johnson v. Mathews*, 539 F.2d 1111 (8th Cir. 1976), in support of his claim.

Defendant incorrectly argues that *Tatum* and *Johnson* preclude the requested class relief. Both cases were class actions challenging SSI statutes which terminated benefits without prior notice or hearing, and held that these statutes violated the Fifth Amendment. Although denying *automatic payment* of SSI benefits unconstitutionally terminated to the class, each Circuit applied its opinion retroactively to the class in two ways: (1) all class members were entitled to have their benefits reinstated until given a hearing on the termination facts (*Tatum v. Mathews, supra,* 541 F.2d at 163; *Johnson v. Mathews, supra,* 539 F.2d at 1114); and (2) all class members were entitled to receive all benefits withheld prior to the court decision if they proved successful at their

---

**14.** See n. 8, *infra.*

**15.** Social Security Act § 1631(e)(1)(B); Claims Manual § 12107 (applicant/recipient must provide some evidence), § 12130 (claim denied if

individual refuses to consent to outside contact); 42 U.S.C. § 1383(b)(c), 20 C.F.R. §§ 416.-538 and 416.558(a) (for determining, preventing, and recouping SSI overpayments).

hearings. *Johnson v. Mathews, supra,* 539 F.2d at 1125, specifically states:

. . . [T]he plaintiff and the members of the class can recover all of the benefits withheld should they prevail upon review of the initial determination of ineligibility. *See* 42 U.S.C. § 1383(b). The government concedes as much in its supplemental brief.

*See also Tatum v. Mathews, supra,* 541 F.2d at 166 n. 5. Neither Circuit perceived any problem under *Chevron Oil;* indeed neither Circuit even mentioned that Supreme Court case.

▆ Plaintiff's requested class relief seeks only the remedy provided by *Tatum* and *Johnson,* an opportunity to prove that class members did not in fact abandon their residences during their brief trips outside the country. Only those class members who did not *in fact* abandon their residences would be entitled to recover the SSI unconstitutionally withheld, just as in *Tatum* and *Johnson.*

The Supreme Court in *Chevron Oil* set forth the following:

In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. *First,* the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, (cites omitted), or by deciding an issue of first impression whose resolution was not clearly foreshadowed, (cites omitted). *Second,* it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." (Cites omitted.) *Finally,* we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our

cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." (Cites omitted.) 404 U.S. at 106–107, 92 S.Ct. at 355. (Emphasis added).

*Jimenez v. Weinberger, supra,* 523 F.2d 689, is the only Social Security decision considering the *Chevron Oil* retroactivity factors, and *Jimenez* clearly supports the class relief requested here.[16] While the *Jimenez* court recognized the Supreme Court's decision invalidating 42 U.S.C. § 416(h)(2)(A) (417 U.S. 638 (1975)) did establish a "new principle of law" under *Chevron Oil* factor number one, the *Jimenez* court held that *Chevron Oil* factors two and three mandated retroactive benefits to all class members. *Id.* at 703. The *Jimenez* analysis applies to the class relief requested here.

This court agrees with defendant that the decision declaring § 1611(f) of the Social Security Act unconstitutional establishes a "new principle of law" not clearly foreshadowed by past decision. However, defendant Secretary fails under the second and third factors of *Chevron Oil.* The purposes behind the SSI program support the relief requested. As described in *Cardinale v. Mathews,* 399 F.Supp. 1163, 1164 (D.D.C. 1975),

[t]he [SSI] program was designed to *provide positive assurance* that the nation's aged, blind, and disabled would *no longer have to subsist on below-poverty-level incomes.* (Citations omitted.) Congress recognized that aged, blind, and disabled individuals may be in need notwithstanding Social Security benefits, Veterans' Administration benefits, or even private pension benefits. SSI was intended to supplement those other sources of income *to free the poor from want and the indignities of poverty.* (Emphasis added.)

The needy have been unconstitutionally denied these benefits. The denial of these benefits necessarily required the plaintiff class members to consume other assets in order to attempt to maintain their standard of living, while at the same time exercise

---

**16.** The Seventh Circuit's decision in *Jimenez* directed a far more drastic remedy than plaintiffs request here: *automatic retroactive payments* to class members denied children's insurance benefits pursuant to the statute there ruled unconstitutional.

their right to travel. These people are still needy, maybe even more so for having taken their trips abroad, and so surely the retroactive payment of such benefits furthers, rather than impedes, the effectuation of the purposes of the SSI program.[17]

As with Title II, Title XVI [SSI] contains a statute permitting retroactive recovery of wrongfully denied SSI benefits, 42 U.S.C. § 1383(b). That statute authorizes recovery of underpayments; there is no requirement that such denials have been willful; any mistaken denial will give rise to such recovery. *See Jimenez v. Weinberger, supra,* 523 F.2d at 703–704 (relying on parallel provisions in Title II of Social Security Act, 42 U.S.C. § 404). Thus, like Title II recipients, Congress intended that Title XVI beneficiaries "receive the full and correct amount of their entitlement, even if this requires payments to be made long after the period of entitlement." *Id.,* 523 F.2d at 704.

Turning to the third factor of the *Chevron Oil* case, this court finds that the requested class relief will not produce "substantial inequitable results." On the one hand, substantial equities favor affording plaintiffs the opportunity of proving that defendant unconstitutionally and incorrectly denied their SSI benefits. On the other, there is defendant's apparent concession that the requested class relief will not "necessitate a reduction in the scope of persons benefitted by [the SSI program]." *Jimenez v. Weinberger, supra,* 523 F.2d at 704. Instead, defendant only makes an assertion that "[t]he administrative burden involved would outweigh any benefits which would result" from the requested class relief. [Def. Brief Class Relief at 6, lines 12–13.] Decisions within the Ninth Circuit reject this assertion as a basis for denying class relief. *Jen Cuk v. Brian,* 355 F.Supp. 133, 136 (N.D.Cal.1972). If courts denied retroactive relief because of increased administrative costs alone, the government would never be compelled to repay benefits to which recipients were later found entitled.

For all these reasons, the requested class relief is not barred by any principle against retroactivity of judicial decisions.

## B. Retroactivity and Sovereign Immunity

 It is settled law that the United States, as sovereign, "is immune from suit save as it consents to be sued . . ." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). In *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), two government attorneys sought job reclassifications under the Classification Act. The Supreme Court held that any award of back pay was barred by sovereign immunity. The Court noted that the Tucker Act, 28 U.S.C. § 1491, which was the basis for jurisdiction, did "not create any substantive right enforceable against the United States for money damages." *Id.* at 398, 96 S.Ct. at 953.

Based on the *Testan* case, the two circuit courts in *Johnson, supra,* (8th Cir.) and *Tatum, supra,* (6th Cir.) held:

> As with the Tucker Act, § 405(g) [the jurisdictional statute in the instant case] is only jurisdictional in nature and *cannot itself constitute a waiver of sovereign immunity or* confer the requisite substantive right. Such a waiver and right must be found, if at all, in the statutes creating the SSI program. 539 F.2d at 1123.

Both *Johnson* and *Tatum* found that Title XVI [SSI] created no substantive right to receive SSI benefits, and thus the plaintiffs' class could not receive retroactive payments. Defendant contends the same should apply here.

This court need not go into all of the arguments raised by the plaintiff, because this court, as will be discussed further in the following section of this opinion, grants the plaintiff class the same remedy that the

---

**17.** This is premised on the idea that past benefits owed should go to those who are still *presently needy.* Those *no longer needy,* even if they were needy at the time they took their trip, would not need the past benefits to meet their *current* needs as envisioned under the goals of the program. This will be explored more fully in defining the scope and method of relief available to plaintiff's class.

courts in *Johnson* and *Tatum* found appropriate. In *Johnson* and *Tatum*, the circuit courts held that under the facts of those cases, the determination of benefits without a noticed hearing regarding the class members eligibility was unconstitutional. The Secretary was enjoined from denying payments to the plaintiff class from the time of the courts' judgments until the noticed hearing could be held. However, because the courts had held that sovereign immunity barred retroactivity, the plaintiff class was denied automatic back payments for the time from initial cut off of payments until the courts' judgments.

The circuit courts noted that there would be no permanent harm, because if the plaintiff class member showed he was eligible at the noticed hearing then he could recover *all* of the benefits withheld, citing to 42 U.S.C. § 1383(b). *Johnson v. Mathews, supra*, 539 F.2d at 1125.

The same reasoning applies in the instant case. Only those still needy will be affected by this court's judgment (see following section of opinion). This court will be ordering that the decisions denying benefits in the past, based solely on § 1611(f), are void and that the plaintiff class has the right to seek a hearing to show that they were in fact still residents of the United States during the period they were out of the country. If they can make such a showing at the hearing, then they can recover retroactive payments for the time they were out of the country, pursuant to 42 U.S.C. § 1383(b). This remedy will remedy the fears of the defendant Secretary and meets the concerns expressed in *Testan, supra, Johnson, supra* and *Tatum, supra.*

For all these reasons, the contentions of the defendant regarding retroactivity as it relates to sovereign immunity in the factual situation presented here are denied.

### C. *Scope and Method of Relief*

Retirement benefits under the Social Security Act are based on the amount of payments made into the Social Security fund by the individual employee and his employer. On the other hand, SSI benefits are based on need. "The [SSI] program was designed to provide positive assurance that the nation's aged, blind, and disabled would no longer have to subsist on below-poverty-level incomes." *Cardinale v. Mathews, supra,* 399 F.Supp. at 1164.

As was clearly stated in *Rothstein v. Wyman,* 467 F.2d 226, 235 (2nd Cir.), *cert. denied* 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 (1972):

. . . Federal standards are designed to ensure that those needs [of impoverished persons] are equitably met; and there may perhaps be cases in which the prompt payment of funds wrongfully withheld will serve that end. As time goes by, however, retroactive payments become compensatory rather than remedial; the coincidence between previously ascertained and existing needs becomes less clear.

■ The purpose of the SSI program is to help those who are *currently* needy. It follows that where there is no need, the goals of the program would not be effectuated by the payment of SSI benefits. Therefore, not all previous recipients of SSI benefits who were denied payments, solely because of § 1611(f), should now receive those lost benefits. The retroactive payments should go to *only* those who were unconstitutionally denied benefits in the past and who are *still* eligible for SSI benefits. If a person is not presently needy, then there would be no purpose served by granting him retroactive benefits. In such a situation the payments would "become compensatory rather than remedial." *Id.*

The Order to follow this Opinion will limit relief to those members of the certified class who are receiving SSI benefits on the date the Order is entered and to those class members who would be receiving SSI benefits on the date of the entered Order, but for current operation of section 1611(f), 42 U.S.C. § 1382(f).

The plaintiff seeks also to have included all those class members who *could be* eligible to receive SSI benefits on the date the

Order is entered, but who had their SSI denied, suspended, interrupted, or terminated pursuant to § 1611(f) and regulations promulgated thereunder during the class period, and *do not have an active application* for SSI on file with defendant. However, it is not evident that these persons fall within the group of persons that the SSI program was designed to benefit. It is of course possible that many of these persons are indeed needy, but without an active application by them with the Social Security Administration, it would be mere speculation as to their economic status. It would impose a completely unrealistic and undue burden on the defendant to expect him to determine who these persons might be.

The parties agree that residency in the United States is a valid prerequisite to receipt of SSI benefits.[18] The burden is on the recipient/applicant to establish his or her eligibility and produce documentary evidence where required.[19] Consequently when a SSI recipient does depart the United States for more than one month, it would be necessary for the recipient to prove that he or she was still in fact a United States resident during the time he or she was out of the United States. This can properly be accomplished by allowing all class members, previously defined, who have had their benefits denied, suspended, interrupted or terminated under § 1611(f), to have their eligibility for SSI redetermined, without regard to that statute or accompanying regulations. Defendant Secretary will be ordered to prepare and file with this court a notice informing the class members of this court's decision and of the opportunity for a redetermination of their denials, suspensions, interruptions or terminations of SSI as a result of § 1611(f).

It is an uncontested fact that plaintiff Aznavorian was a resident during the months of August and September 1974, and therefore she is entitled to receive SSI benefits denied her for those months. Defendant will be directed to pay those benefits denied to Grace Aznavorian for those particular months.

An Order will immediately follow, incorporating the conclusions contained in this Opinion.

## ORDER

Consistent with this court's opinion filed herewith, and the court having determined (1) that the class defined below meets the requirements of Federal Rule 23(a) and (b)(2), and (2) that there is no genuine issue as to any material fact regarding plaintiff Grace Aznavorian's eligibility for Supplemental Security Income (SSI) during August and September 1974, this court hereby (1) grants the motion for class certification on behalf of the class defined below, (2) grants plaintiffs summary judgment, and (3) grants individual and class relief pursuant to the provisions in this order, because such provisions are necessary to afford all plaintiffs the full legal and equitable relief to which they are entitled.

IT IS HEREBY ORDERED THAT:

1. This suit is certified as a class action under 42 U.S.C. §§ 405(g), 1383(c)(3) and Federal Rule 23(a) and (b)(2) on behalf of the following class:

> All individuals otherwise eligible for Supplemental Security Income, who have had such SSI denied, suspended, terminated, or interrupted pursuant to an initial written determination, an administrative reconsideration, an administrative hearing, or an Appeals Council review, based solely on 42 U.S.C. § 1382(f) and regulations promulgated thereunder, from September 26, 1975 until the entry of this Order.

2. 42 U.S.C. § 1382(f) and regulations promulgated thereunder are declared in violation of the due process clause of the Fifth Amendment to the United States Constitution and therefore invalid insofar as they cause defendant to suspend, interrupt, terminate, or deny SSI to otherwise eligible individuals solely because they travel outside the United States for one calendar month or thirty (30) consecutive days. Ac-

---

**18.** See n. 7, *infra.*

**19.** See n. 13, *infra.*

cordingly, 42 U.S.C. § 1382(f) and regulations promulgated thereunder are hereby declared null and void in their entirety.

3. Defendant's decision of September 26, 1975 affirming the suspension of plaintiff Aznavorian's SSI benefits for August and September 1974, pursuant to 42 U.S.C. § 1382(f) and regulations promulgated thereunder, is hereby reversed. Plaintiff Aznavorian is entitled to receive the SSI benefits denied her for August and September 1974. Therefore, defendant, his agents, employees and successors are hereby ordered to pay said benefits to plaintiff Aznavorian, within sixty (60) days of this order's entry.

4. By reason of 42 U.S.C. § 1382(f) and regulations promulgated thereunder being declared invalid, null and void for violating the due process clause of the Fifth Amendment to the United States Constitution, the denials, suspensions, interruptions, and terminations of SSI pursuant to said statute and regulations are hereby reversed and declared null and void for all the following members of the certified class:

(a) All those class members who *are* receiving SSI benefits on the date this order is entered;

(b) All those class members who *would be* receiving SSI benefits on the date this order is entered, but for current operation of Section 1382(f) and regulations promulgated thereunder.

5. All class members identified above in paragraph 4 are entitled to have defendant, his agents, employees and successors redetermine their eligibility for SSI during the time period such benefits were denied, suspended, interrupted or terminated under Section 1382(f) and accompanying regulations, without regard to such statute or regulations, and according to the principles set forth in the opinion. All such class members who *in fact* were United States residents during such time periods are entitled to receive all SSI benefits withheld under Section 1382(f) and regulations promulgated thereunder.

6. Defendant, his agents, employees and successors are ordered to prepare and file with this Court a notice informing all class members identified above in paragraph 4 of the following:

(a) that this Court has declared Section 1382(f) and regulations promulgated thereunder invalid, null and void under the Fifth Amendment to the United States Constitution;

(b) that this Court has reversed all such class members' denials, suspensions, interruptions and terminations of SSI pursuant to Section 1382(f) and regulations promulgated thereunder, and declared such decisions null and void;

(c) that all such class members, within six (6) months after receiving the notice set forth in this paragraph, are entitled to request defendant, his agents, employees and successors for a redetermination of their denials, suspensions, interruptions or terminations of SSI, without regard to Section 1382(f) or any regulations promulgated thereunder, and pursuant to standards consistent with this Court's Opinion (which shall be stated in the notice);

(d) that all such class members are entitled to all administrative and judicial review of any adverse redeterminations, which would otherwise be available on adverse initial determinations; and

(e) that all such class members, who, on the basis of the proceedings in (c) and (d), are determined to have been United States residents *in fact* during the disqualification period caused by Section 1382(f), and regulations promulgated thereunder, are entitled to receive such SSI benefits.

Defendant, his agents, employees and successors shall file a copy of such proposed notice with the court and serve a copy on plaintiffs' counsel within thirty (30) days of the date this order is entered. If plaintiff's counsel has any objections to defendant's proposed notice, such objections shall be filed with the court and served on counsel for defendant within thirty (30) days after

service of the proposed notice on plaintiff's counsel. The court will then approve a notice form, and defendant shall mail it within thirty (30) days to all persons who received SSI benefits at any time from September 26, 1975 to the date this order is entered.

7. Defendant, his agents, employees and successors are ordered to pay the SSI benefits originally denied pursuant to Section 1382(f), and regulations promulgated thereunder, to all those class members identified above in paragraph 6(e) within sixty (60) days of a favorable decision in the proceedings set forth in paragraph 6(c), (d).

8. Defendant, his agents, employees and successors are further ordered to file an affidavit with this court, and serve a copy on plaintiff's counsel, attesting to timely mailing of the notice defined above in paragraph 6.

9. This court retains jurisdiction of this cause until all relief herein has been effectuated, and may, if necessary, require defendant, his agents, employees and successors to file reports describing their progress in effectuating said relief.

10. This court finds no just reason for delaying the enforcement of this order.