**WAYNE STATE UNIVERSITY et al., Plaintiffs,**

v.

**Max CLELAND, Administrator, Veterans' Administration, et al., Defendants.**

Civ. A. No. 7–70973.

United States District Court, E. D. Michigan, S. D.

Feb. 2, 1979.

---

James K. Robinson, U. S. Atty., Charles J. Kalil, Asst. U. S. Atty., Detroit, Mich., for defendants.

Elmer L. Roller, Gordon A. Gregory, Detroit, Mich., Richard A. Fulton, C. William Tayler, Kenneth J. Ingram, Washington, D. C., for plaintiffs.

MEMORANDUM OPINION AND ORDER

JULIAN ABELE COOK, Jr., District Judge.

On April 21, 1977, Wayne State University and five named students brought this action against the Administrator of the Veterans' Administration and other Veteran Administration officials seeking a temporary restraining order and a preliminary injunction to prevent the Veterans' Administration from implementing new regulations which would result in classifying vet-

eran students in the University's Weekend College Program of its College of Lifelong Learning as part-time for the purpose of determining veterans' educational assistance allowance benefits.

The Court declined from issuing the temporary restraining order, but on April 27, 1977 granted a preliminary injunction. On June 22, 1977, on reconsideration, the Court vacated the preliminary injunction on the grounds that the Plaintiffs had not shown irreparable harm and additionally on the grounds that the Court lacked subject matter jurisdiction under 38 U.S.C. § 211(a).

On July 12, 1977, the Court heard Defendants' Motion to Dismiss.[1] At that Hearing, the Court reversed its earlier ruling on jurisdiction and reinterpreted 38 U.S.C. § 211(a) as granting judicial review of both statutory and constitutional challenges of Veterans' Administration regulations, relying in part on the case of *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). At that same Hearing, the Court granted Plaintiff's Motion for Reinstatement of the Preliminary Injunction. Subsequently, the parties submitted Cross-Motions for Summary Judgment.

At the September, 1977 Summary Judgment proceeding, the Court certified the full-time veteran students enrolled in the Weekend College Program as a class pursuant to Rule 23(b)(2) and Rule 23(c)(1) of the *Federal Rules of Civil Procedure.*

The Court went on to find that the Veterans' Administration officials exceeded their statutory authority in issuing regulations which defined full time study independently and differently from the University's definition. The Court held the VA Regulation 14272(d), 38 C.F.R. § 21.4272(d) announced at 41 Fed.Reg. 14398 (1976) *and* the DVB circular 20–77–16 as changed, void and of no effect.[2]

The Veterans' Administration appealed, and on December 21, 1978, the Sixth Circuit Court of Appeals rendered it's decision. The Court made three separate holdings: (1) it affirmed the District Court's finding of jurisdiction; (2) it reversed the District Court's judgment on the merits, saying in part:

> The regulations are not an arbitrary and capricious exercise of administrative authority. Rather, they are a rational and reasonable implementation of what is meant by "semester hour." The regulations are also a reasonable means to insure that potential abuses in the administration of veterans' educational benefits are prevented. The procedures used by the Administrator in promulgating these regulations have not been challenged.
> . . . The district court erred in finding such regulations void. The district court erred in substituting its judgment for that of the Administrator.[3]

and (3) the Sixth Circuit remanded the case for a determination of the constitutional issues not reached earlier by the District Court.[4]

Subsequent to this decision, the Plaintiffs-Appellees petitioned for rehearing, said petition not yet having been ruled upon. At the same time, the Defendants-Appellants petitioned the Court for an issuance of a mandate. The mandate was granted and issued on January 17, 1979.

On January 23, 1979, Plaintiffs again came to Court seeking a temporary restraining order but, in meeting with Defendants, realized the immediacy of a temporary restraining order was unnecessary. Thereupon, this Court having been assigned the case from the docket of Judge (now Circuit Judge) Damon J. Keith, set the Motion for Preliminary Injunction for February 2, 1979.

---

1. *Wayne State University v. Cleland*, 440 F.Supp. 806 (E.D.Mich.1977).

2. *Wayne State University v. Cleland*, 440 F.Supp. 811 (E.D.Mich.1977).

3. *Wayne State University v. Cleland*, 590 F.2d 627 at p. 634 (6th Cir. 1978).

4. *Wayne State University v. Cleland*, 590 F.2d 627 (6th Cir. 1978).

In *Drumright v. Padzieski*,[5] the Court summarized the requirements needed before a preliminary injunction could be granted.

> (1) a showing of probable success on the merits; (2) irreparable injury; (3) overriding harm to the plaintiff relative to the defendant; and (4) furtherance of the public interest.[6]

The Court went on to note that "In ruling upon a motion for preliminary injunction the Court is required to engage in a wide-ranging balancing test familiar to courts of equity." [7]

■ This Court, in considering the issue of irreparable harm, looks not only to the testimony (and affidavits) presented, but equally carefully to whether the constitutional rights of the class and/or the University are, on the basis of the evidence before this Court, being violated at the present time.

The class of students (via testimony and affidavits) claim that the regulation which classifies them as part-time, rather than full-time, will seriously impair their likelihood of remaining in school. The students have variously testified before this Court that the difference in benefits between what they will receive as full-time students and what they will receive as part-time students will make it extremely hard to remain in school, may create a possibility of having to discontinue participation in the weekend college program, and may in fact necessitate acquiring a student loan.

Further, Wayne State argues, and Dean Robert E. Hubbard testified, that in the event that this regulation should go into effect, the possibility clearly exists that the Weekend College Program of the College of Lifelong Learning will suffer a reduction in the number of veteran students, greatly jeopardizing the future of the Weekend College. Dean Hubbard further testified that fifty-six (56) students, to date, have withdrawn on the basis of the recent Sixth Circuit reversal.

Plaintiffs challenge the regulations as infringing upon their First and Fifth Amendment Rights and as being an improper governmental intrusion upon academic freedom.

In partial support of their First Amendment argument, Plaintiffs cite *United States Department of Agriculture v. Moreno*,[8] wherein the Supreme Court held a food stamp regulation violative of the equal protection component of the due process clause of the Fifth Amendment. This Court notes that it was Justice Douglas, alone, in his concurrence who felt the First Amendment lended support to the Court's ruling. The majority struck down the regulation on Fifth Amendment grounds alone.

This Court has reviewed the cases cited by Plaintiffs and by the American Council on Education in its brief *amicus curiae* and finds them to be distinguishable from the present action. Any effect the regulation *may* have upon the Plaintiffs' First Amendment associational rights, or upon the University's right to be free from governmental intrusion into educational policy *is at most an indirect effect.* Therefore, Plaintiffs face a difficult, if not impossible, burden in proving a First Amendment violation under controlling law.

Plaintiffs further allege that the challenged regulation violates their Fifth Amendment rights.

■ The Supreme Court applies a two-tier equal protection analysis; a strict scrutiny or compelling state interest standard for classifications based on race or national origin, and a rational basis test for other classifications, especially in the social wel-

5. *Drumright v. Padzieski*, 436 F.Supp. 310 (E.D. Mich.1977).

6. *Drumright v. Padzieski*, 436 F.Supp. 310, 325 (E.D.Mich.1977).

7. *Drumright v. Padzieski*, 436 F.Supp. 310, 326 (E.D.Mich.1977).

8. *United States Department of Agriculture v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973).

fare context.[9] It is clear that this regulation should be viewed under the rational basis test.

In *Dandridge v. Williams*,[10] the Supreme Court commented upon the rational basis standard of review.

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 [31 S.Ct. 337, 340, 55 L.Ed. 369]. . . . But the Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all. . . .
> It is enough that the State's action be rationally based and free from invidious discrimination.[11]

Most recently in *Califano v. Aznavorian*, 439 U.S. 170, 99 S.Ct. 471, 58 L.Ed.2d 435,[12] the Supreme Court, relying upon *Dandridge v. Williams*, id., upheld a provision of the Social Security Act which denied benefits for any month during which an individual has been outside of the United States. Plaintiff argued the regulation infringed upon her "right to travel." Though the Court felt that the justifications for that legislation were not compelling, they were rationally based, and hence upheld.[13]

Strikingly analogous to this case was the recent case of *Cleland v. National College of Business.*[14] There, the Supreme Court held that the due process clause of the Fifth Amendment did not prohibit Congress from restricting the educational courses for which veterans' benefits were available without including identical course limitations in other Federal educational assistance programs. The Court held:

> When tested by their rationality, therefore the 85–15 requirement and the two-year rule are plainly proper exercises of Congress' authority. . . . Legislative precision has never been constitutionally required in cases of this kind.[15]

And while recognizing the importance of the educational rights involved, the Court refused to depart from the usual standard for reviewing social and economic legislation.

In light of the above cited authority and of the Sixth Circuit's previous finding that the regulation at issue here is both reasonable and rational for statutory purposes, it is this Court's opinion that Plaintiffs, on the evidence presently before the Court, will be unlikely to succeed in proving that the challenged regulation is violative of Equal Protection, under the Fifth Amendment, and further it is this Court's opinion that Plaintiffs, at present, are not being denied equal protection of the law.

In *Mathews v. Eldridge*,[16] the Court set out the requirements necessary to guarantee procedural due process.

> This Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest. . . . our prior decisions indicate that identification of the

---

**9.** Recently, the Court has interjected a middle standard of review but has applied this standard only to discrimination based upon sex, illegitimacy, and though unsettled, alienage.

**10.** *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

**11.** *Dandridge v. Williams*, 397 U.S. 471, 485, 486, 90 S.Ct. 1153, 1161, 1162, 25 L.Ed.2d 491 (1970).

**12.** *Califano v. Aznavorian*, cert. granted, 435 U.S. 921, 98 S.Ct. 1482, 55 L.Ed.2d 514 (1978).

**13.** In *Malis v. Hills*, 588 F.2d 545 (6th Cir. 1978), the Sixth Circuit also relied upon *Dandridge v. Williams* in upholding a HUD regulation directed at AFDC recipients.

**14.** *Cleland v. National College of Business*, 435 U.S. 213, 98 S.Ct. 1024, 55 L.Ed.2d 225 (1978).

**15.** *Cleland v. National College of Business*, 435 U.S. 213, 220, 98 S.Ct. 1024, 55 L.Ed.2d 225 (1978).

**16.** *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[17]

*Mathews v. Eldridge,* id., following *Goldberg v. Kelly,*[18] however, presupposes the need for an individualized hearing. Plaintiffs in this action have not presented the Court with proof of such a need nor have they argued that varying factual situations are present to require such hearing. Further, Plaintiffs, as the Sixth Circuit noted in it's decision, have not challenged the procedure under which the regulation was promulgated.

Thus, while the Court clearly believes there to be a property interest at stake, it does not see a need, and is not presented with evidence requiring any such need for individualized hearings prior to classification from full-time to part-time status.

Therefore, the Court finds no procedural due process problems existing at present, and, in fact, notes that Plaintiffs have not advanced any such argument.

 In construing the claim of irreparable harm in terms of Plaintiffs' allegations and also in terms of the possibility of any constitutional violations which would, in this Court's opinion, constitute irreparable injury, this Court, though it finds sufficient evidence of harm and the possibility of future irreparable harm before it, is unable to find a showing of immediate irreparable harm. The Court notes that the amount of benefits provided to a part-time veteran student is sufficient to defray not only tuition fees, but supplies and transportation, with some funds yet remaining. The Court,

in so evaluating, has necessarily considered the probability of success on the merits. Therefore, finding neither a sufficient showing of immediate irreparable harm nor any constitutional violations existing on the evidence presented, the Plaintiffs' Motion for Preliminary Injunction is, and shall be, denied.

So ordered.

---

17. *Mathews v. Eldridge,* 424 U.S. 319, 333, 335, 96 S.Ct. 893, 902–903, 47 L.Ed.2d 18 (1976).

18. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).