850 F.2d 692
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jacques D. CHRISTIAN, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 87-1356.
 United States Court of Appeals, Sixth Circuit.
 July 6, 1988.
 
 Before CORNELIA G. KENNEDY and RYAN, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 The plaintiff-appellant, Jacques D. Christian applied for disability insurance benefits due to ischemic heart disease, hypertension, diabetes and lymphoma on May 13, 1985. A formal hearing was held before an Administrative Law Judge (ALJ) who denied the application. The Appeals Council denied Mr. Christian's request for review and adopted the ALJ's decision as its own. Thereafter, Mr. Christian appealed to the district court which assigned the case to a magistrate. The magistrate's report recommending the denial of benefits was adopted by the district court as its decision. Because we find that the decision to deny benefits was supported by substantial evidence, we affirm.
 
 I.
 
 2
 Mr. Christian was born on June 12, 1936, has a twelfth grade education, and was employed by Detroit Edison as a report operator until April 17, 1985. The hearing before the ALJ was held on February 19, 1986, at which time Mr. Christian was three months shy of fifty years of age.
 
 
 3
 Mr. Christian testified at the hearing that he quit work due to chest pains which felt like "a bad case of indigestion." He also described the pain as "a pulling and forceful thing in [his] chest." Additionally, the chest pain caused numbness in both of his arms and hands. These symptoms occurred at least once a day and did not subside after he quit work. The pain, according to Mr. Christian was precipitated by stress, excitement or walking but sometimes occurred when he was asleep or otherwise sedentary. The pain is alleviated within twenty minutes to an hour with nitroglycerin and rest. Additionally, Mr. Christian described symptoms he experienced due to diabetes and hypertension which were medically controlled.
 
 
 4
 Mr. Christian stated that he was able to shave, bath, dress, and feed himself. His sons do the housework and he does most of the cooking. He also does the shopping but cannot vacuum or do yard work. The rest of his time is spent watching television and once a week going to church. He testified that he can walk for thirty minutes at a time without resting. He stated that he has no problem sitting but experiences dizziness if he stoops, squats, or kneels. He can climb stairs but becomes tired. Also, a few times a week he needs to lie down during the day.
 
 
 5
 Mr. Christian was seen at the Cleveland Clinic in July 1981, and was diagnosed as having coronary atherosclerosis with remote anterseptal myocardial infarction. Thereafter, Mr. Christian underwent coronary artery bypass surgery.
 
 
 6
 The claimant's treating physician, Dr. G. Loomis, submitted a report in May of 1985 indicating that the claimant was still experiencing "squeezing" "chest pain of a cardiac origin e.g., ischemia," which radiated substernally, precordially, and into the left shoulder. The report indicates that the pain was precipitated by exertion and alleviated with rest and nitroglycerin and other medications. The doctor also stated that the claimant had diabetes, hypertension, and lymphoma.
 
 
 7
 Dr. Loomis referred Mr. Christian to Dr. Chernick for a Thallium Stress Test which was administered on May 3, 1985. Dr. Chernick noted that Mr. Christian had not been seen by the Cleveland Clinic since the 1982 follow-up visit after the 1981 bypass surgery. He stated that Mr. Christian had "gained a significant amount of weight and apparently had not been on any particular medical program." Although the test was stopped due to Mr. Christian's complaints of fatigue and dyspnoea, Dr. Chernick noted that the results indicated "abnormal thallium response demonstrating a predominantly fixed defect." However, Dr. Chernick's overall impression was that the test was "inconclusive or borderline."
 
 
 8
 Mr. Christian's examination by Dr. Robinson, at the Secretary's request, was aptly summarized by the ALJ.
 
 
 9
 The claimant was examined in October, 1985, by Dr. Robinson, an internist. He reported a weight of 267 pounds and a slight decrease in AV ratio with some AV nicking and increased arteriole light reflex. Blood pressure readings were notably elevated; however, the doctor stated that there was no evidence of diabetic retinopathy or other hypertensive or diabetic target organ damage. The cardiovascular examination revealed a grade II/IV systolic murmur heard over the precordium. The doctor, based on rather meager objective findings, rendered diagnostic impressions of unstable angina, diabetes, and high blood pressure. The doctor stated that the claimant's history and examination was compatible with coronary artery disease and, although he noted a history of diabetes, he stated that it was under fairly good control at that time. According to the doctor, the claimant's ischemic heart disease would not preclude him from lifting up to five pounds or sitting for prolonged periods. He did not feel, however, that the claimant could walk or stand for any significant length of time, as he stated that any physical exertion could produce angina. He also limited the claimant with respect to climbing, stooping, crouching, kneeling, crawling, reaching, or pushing or pulling. He did not indicate any necessity for the claimant to lie down or seek recumbency during the day (Exhibit 21).
 
 
 10
 The ALJ determined that the claimant did not suffer from an impairment listed in Appendix I and found that the claimant had the residual functional capacity to perform a limited range of sedentary work. The ALJ thought that even if the claimant could not perform the full range of sedentary work, there were a number of jobs he could still perform as testified to by Mr. Lawrence Zatkin, a vocational expert. Mr. Zatkin testified that there were 3,500 jobs in the Detroit metropolitan area and 5,000 jobs in the Michigan area which are semi-skilled and could be performed by the claimant, such as dispatching and an inventory control clerk positions. He also stated that the claimant had acquired the skills of following diagrams and maps, working with precision, and communicating under various conditions, which he said would transfer to the jobs described. He further testified that there were 12,000 unskilled positions in Southeastern Michigan that the claimant could perform. Therefore, using the grid as a guideline, the ALJ determined that Mr. Christian was not disabled.
 
 II.
 
 11
 The sole issue in this case is whether the district court properly upheld the Appeals Council's decision to deny benefits.[1] On review, this court's role is to determine whether the Appeals Council's decision (here the ALJ's decision adopted by the Appeals Council) is supported by substantial evidence on the record as a whole. Mullen v. Bowen, 800 F.2d 535, 545-46 (6th Cir.1986). "Substantial evidence is not simply some evidence. Rather, the 'substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of HEW, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 374 (1951)).
 
 
 12
 The steps for evaluating a disability claim are set forth in 20 CFR Sec. 404.1520 and were aptly summarized by this court in Kirk.
 
 
 13
 The regulations require that an initial determination be made as to whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is found "not disabled." Second, it is determined if the claimant has a severe impairment--one that significantly limits the ability to perform work-related functions; if not, then on the medical evidence alone the claimant is determined to be not disabled. Third, if a severe impairment is found, the impairment is compared against those listed in Appendix 1, 20 C.F.R. Subpart P, Appendix I (1981), to see if, on the medical evidence alone, the claimant can be found to be disabled. Assuming the claimant is not found to be disabled, the fourth step requires inquiry into whether the claimant can perform relevant past work; if so, then the claimant is not disabled. The last step in the sequence is the medical-vocational table.... The ALJ is directed to consider the claimant's residual functional capacity, that is, the level of work the claimant is able to perform (sedentary, light or medium) and the claimant's vocational factors--age, education and prior work experience. See 20 C.F.R. Sec. 404.1520 (1981). By this process it is determined whether the claimant is able to perform substantial gainful activity in the national economy. These are precisely the items which the Social Security Act mandates be taken into consideration. 42 U.S.C.A. Sec. 423(d)(2)(A) (1970).
 
 
 14
 667 F.2d at 528.
 
 
 15
 First, the claimant asserts that there is not substantial evidence to support the Secretary's determination that he did not suffer from an impairment listed in Appendix I. Specifically, he contends that he suffers from severe cardiac impairment. 20 C.F.R. Sec. 404, Subpart P, Appendix I, Sec. 4.00A. That section provides:
 
 
 16
 Severe cardiac impairment results from one or more of three consequences of heart disease; (1) congestive heart failure; (2) ischemia (with or without necrosis) of heart muscle; (3) conduction disturbances and/or arrhythmias resulting in cardiac syncope.
 
 
 17
 Dr. Robinson indicated that Christian's physical ability was limited in various ways due to ischemic heart disease. Dr. Loomis, checked "yes" in response to the following question "Is the patient having chest pain of cardiac origin, e.g., that of ischemia?"
 
 The regulations further provide that:
 
 18
 Ischemic heart diseases may result in a marked impairment due to chest pain. Description of the pain must contain the clinical characteristics as discussed under 4.00E. In addition, the clinical impression of chest pain of cardiac origin must be supported by objective evidence as described under 4.00 F.G. or H.
 
 Section 4.00E states:
 
 19
 Chest pain of cardiac origin is considered to be pain which is precipitated by effort and promptly relieved by sublingual nitroglycerin or rapid-acting nitrates or rest. The character of the pain is classically described as crushing, squeezing, burning, or oppressive pain located in the chest. Excluded is sharp, sticking or rhythmic pain. Pain occurring on exercise should be described specifically as to usual inciting factors (kind and degree), character, location, radiation, duration, and responses to nitroglycerin or rest.
 
 
 20
 Clearly the squeezing, burning pain relieved by nitroglycerin described by the claimant and the doctors meets the definition of "chest pain of cardiac origin."
 
 
 21
 However, 4.00D also requires that the clinical impression of chest pain of cardiac origin must be supported by objective evidence as described in 4.00F, G, or H. From the record before us there is no objective evidence that supports the clinical impression of chest pain of cardiac origin of the type required to show the severe cardiac impairment due to ischemia. However, the relevant provision states that the person is disabled if he suffers from an impairment listed in Appendix I or one equal to an impairment listed in Appendix I. 20 C.F.R. Sec. 404.152(d). Even so, there is substantial evidence to support the conclusion that this claimant does not have an impairment equal to one listed in Appendix I.
 
 
 22
 If a claimant does not suffer from an impairment listed in Appendix I, the fourth step requires that the claimant be found not disabled if he can perform his past relevant work. 20 C.F.R. Sec. 1520(e). The ALJ's determination that Mr. Christian could not perform his past work as a report operator is unchallenged. Therefore, pursuant to step five the claimant's ability to perform other work will be evaluated. 20 C.F.R. Sec. 1520(f).
 
 
 23
 At this stage, the following factors must be considered: the claimant's residual funcational capacity, his age, his education, and his past work experience. Mr. Christian was almost fifty years of age at the time of the hearing and thus he was "closely approaching advanced age." 20 C.F.R. Sec. 1563(a), (c). His educational level was twelfth grade, and the record includes no evidence indicating that his education provided for direct entry into skilled work. The ALJ found that he had the residual functional capacity to perform a limited range of sedentary work and a vocational expert indicated that his past work was "not quite semi-skilled."
 
 
 24
 Residual functional capacity refers to a determination as to what a claimant can do in spite of his limitations. 20 C.F.R. Sec. 404.1545(a). Both exertional and nonexertional limitations are taken into consideration. Id. at (b), (d). In a case such as this one, where the claimant's impairment is due to both strength and nonexertional limitations, the rules in Appendix II, Subpart P--The Medical Vocational Guidelines, are first examined to see if a finding of disability can be directed based on solely the strength limitations. 20 C.F.R. 200.00(e)(2). However, in this case, the relevant table, Table I, does not direct a finding of disability because the findings of fact about Mr. Christian's past work skill level do not exactly fit the list of categories. 20 C.F.R. Sec. 404.1569; 200.09-.16. The claimant's past work was not quite semi-skilled with some transferable skills.
 
 
 25
 Therefore, the rules are used to provide a framework for considering the claimant's work capability in light of the exertional and nonexertional limitations. If the claimant's past work was unskilled, he would be disabled. 201.15. If it was semi-skilled, and the skills were transferable, he would not be disabled on strength limitations alone, and his nonexertional limitations would need to be considered. 201.15. Considering the testimony with respect to available jobs which the claimant could perform and his nonexertional limitations due to his allegations of pain, the ALJ found that the claimant was not disabled.
 
 
 26
 Appellant argues that the ALJ's determination that appellant's angina pain is not disabling is unsupported by substantial evidence. The ALJ found that claimant's testimony as to the severity of his pain was not credible and not consistent with the evidence. The ALJ found claimant's testimony with respect to the duration of frequency of his chest pain to be vague. He concluded that in view of claimant's testimony that he is able to do the shopping, cook for his sons and himself, do laundry, go to church, that he was able to do non-stressful sedentary work. Claimant acknowledged that his angina attacks ordinarily come on when he physically exerts himself. The "Medical Assessment of Ability to do Work-Related Activities" form completed by Dr. Robinson, states under III, "Is sitting affected by impairment. No." Lifting and carrying are limited to five pounds. Nothing in that report indicates that claimant's condition produces pain that prevents sedentary work. Dr. Chernick's report at 5/3/85 records claimant's activity level as "normally active." Therefore ALJ was warranted in concluding that claimant failed to provide objective medical evidence that confirmed the severity of his chest pain or established a condition of such severity that it could be expected to produce such alleged disabling pain. Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir.1986). Because we find that these determinations are supported by substantial evidence in the record, we must affirm.
 
 IV.
 
 27
 Accordingly, we AFFIRM the district court's order upholding the Appeals Council's decision that Mr. Christian was not disabled and therefore not entitled to disability insurance benefits.
 
 
 
 [1]
 The claimant's due process claim was not presented to the district court and therefore is not properly before this court. Boone Coal & Timber Co. v. Polan, 787 F.2d 1056, 1064 (6th Cir.1984). Additionally, the claimant's assertion that the age distinctions and the medical vocational guidelines violate the Equal Protection Clause because they impermissibly discriminate on the basis of age is without merit. In Kirk v. Secretary of Health and Human Services, 667 F.2d 524 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983), this circuit determined that the grid did not violate the Equal Protection Clause or impermissibly discriminate against the elderly. Id. at 532, 33. Although this is a case in which a younger person is alleging discrimination, the analysis in that case is dispositive
 This circuit's standard of review as stated in Kirk requires the appellant to show that no reasonable basis exists for the distinctions drawn for "[u]nless the limitation imposed by Congress is wholly irrational, it is constitutional...." Id. at 532 (quoting Califano v. Aznavorian, 439 U.S. 170 (1978). We are persuaded by the Kirk court's explanation that the age distinctions drawn in the grid are reasonable:
 [T]he prior experience of Social Security Administration in judging the effect of age in job acquisition was utilized in "determining when age makes a difference in disability determinations...." Id. In line with the Secretary's acknowledgement, the regulations specifically provide that age cut-off lines are not to be applied mechanistically. 20 C.F.R. Sec. 404.1563(a) (1981) states: "We explain in detail how we consider age as a vocational factor in Appendix 2. However, we will not apply these age categories mechanically in a borderline situation." Thus, the regulations themselves take into account the lack of precision which arbitrary line-drawing always involves. Finally, it is clear that administrative distinctions need not be drawn with mathematical precision, especially when government benefits are being distributed.
 Id. at 532.