NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BENJAMIN WAYNE LATHAM, PATRICIA MUSILECK LATHAM,**
*Petitioners*

**v.**

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent*

---

2025-1540

---

Petition for review pursuant to 38 U.S.C. Section 502.

---

Decided:  June 16, 2026

---

BENJAMIN WAYNE LATHAM, Raleigh, NC, pro se.

PATRICIA MUSILECK LATHAM, Raleigh, NC, pro se.

SOSUN BAE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by ERIC P. BRUSKIN, PATRICIA M. MCCARTHY, BRETT SHUMATE; SCOTT J. SHOREMAN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before LOURIE, CUNNINGHAM, and STARK, *Circuit Judges.*

PER CURIAM.

Benjamin Latham, a veteran of the U.S. Marine Corps, and Patricia Latham, his wife and caretaker, petition this court under 38 U.S.C. § 502 to review regulations promulgated by the Department of Veterans Affairs ("VA"). While the Lathams have standing to challenge the VA regulations, their contentions fail on the merits. Thus, we deny the petition.

I

Congress created the Program of Comprehensive Assistance for Family Caregivers ("PCAFC") in the Caregivers and Veterans Omnibus Health Services Act of 2010 ("Caregivers Act"), which is codified at 38 U.S.C. § 1720G. *See* 124 Stat. 1132. VA regulations governing the implementation of the PCAFC are set out at 38 C.F.R. part 71. *See* 76 Fed. Reg. 26148 (May 5, 2011).

In 2018, the John S. McCain III, Daniel K. Akaka, and Samuel R. Johnson VA Maintaining Internal Systems and Strengthening Integrated Outside Networks Act of 2018 ("MISSION Act") became law, amending 38 U.S.C. § 1720G in various ways. *See* 132 Stat. 1393. In response to enactment of the MISSION Act, on March 6, 2020 the VA published proposed updates to its regulations. *See* 85 Fed. Reg. 13356. One proposed rule would alter the PCAFC eligibility requirements and reassessment procedures. *See id.* at 13356, 13378. Under the proposed rule, "legacy participants" in the PCAFC – that is, individuals who were participants prior to the adoption of the new rule – would have a transition period, preventing them from being discharged from the PCAFC for 12 months, even if they did not meet the new eligibility criteria imposed by the rule. *See id.* at 13370.

The VA published the final rule on July 31, 2020. *See* 85 Fed. Reg. 46226. While several commenters posited that legacy participants should be "grandfather[ed]" into the PCAFC, and remain in the program regardless of whether they meet the new criteria, the VA rejected this position, explaining that creating two different systems would be administratively prohibitive, confusing, and result in inequities among similarly-situated veterans and caregivers. *See id.* at 46253.

In two subsequent interim final rules, the VA extended the transition period for all legacy participants to September 30, 2025. *See* 86 Fed. Reg. 52614, 52615-16 (Sept. 22, 2021); 87 Fed. Reg. 57602, 57603 (Sept. 21, 2022). In September 2025, the VA published a final rule, which further extended the transition period to September 30, 2028. *See* 90 Fed. Reg. 46477 (Sept. 29, 2025).

## II

Mr. Latham served on active duty in the United States Marine Corps from June 2010 to January 2015. *See Latham v. Collins*, 2025 WL 733106, at *1 (Fed. Cir. Mar. 7, 2025) (dismissing, for lack of jurisdiction, Mr. Latham's previous appeal seeking certain PCAFC benefits). The VA has awarded him a 100 percent combined disability rating and special monthly compensation, including an allowance for aid and attendance, effective January 31, 2015. Also in 2015, the Lathams jointly applied for, and received, benefits under the PCAFC. Mrs. Latham was designated as the primary family caregiver and awarded a stipend equivalent to 25 hours of caregiver assistance, commonly referred to as "Tier 2." The Lathams, thus, are legacy participants in the PCAFC.

In March 2025, the Lathams filed their petition challenging the VA's proposed final rule. We have exclusive, original jurisdiction to review such challenges to rulemaking actions taken by the Secretary of Veterans Affairs. *See* 38 U.S.C. § 502. In particular, "under 38 U.S.C. § 502, we

may review the VA's procedural and substantive rules, any amendments to those rules, and the process in which those rules are made or amended." *Disabled Am. Veterans v. Gober*, 234 F.3d 682, 688-69 (Fed. Cir. 2000), *overruled on other grounds by Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*, 981 F.3d 1360 (Fed. Cir. 2020) (en banc).

## III

The Secretary seeks to dismiss the Lathams' petition based on their purported lack of standing. Generally, a party has standing if she demonstrates "(i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). The injury in fact must be "concrete *and* particularized," not merely "conjectural or hypothetical." *JTEKT Corp. v. GKN Auto. Ltd.*, 898 F.3d 1217, 1220 (Fed. Cir. 2018).

The Secretary asserts that the "Lathams did not address standing or submit evidence demonstrating standing, and they have not otherwise alleged to have suffered (or that they likely will suffer) an injury in fact, or that the injury likely was caused or will be caused by any of the VA's rules at issue in this petition." Resp. Br. at 9. We disagree.

The Lathams allege that the "regulations and prior unpublished policies challenged herein govern Petitioner's eligibility . . . [for] PCAFC benefits, and such burdens have caused, and continue to cause, concrete injuries." Open. Br. at 3. They have submitted an order from the Board of Veterans' Appeals which states that "[t]he Veteran is a legacy participant in the PCAFC program" but adds that "the Veterans Health Administration (VHA) found that the Veteran did not meet the new eligibility requirements for the

PCAFC program." Appx56-57.[1]  While the referenced decision of the VHA is now moot, it demonstrates that the Lathams are legacy participants subject to the new requirements who may suffer the concrete injury of being ousted from the program due to application of the very rule they are challenging.  *See* Appx58.  The final rule "establishes the requirement for reassessments" of participation in the PCAFC, which will determine if the Lathams, as legacy participants, continue to benefit from the program.  *See* 85 Fed. Reg. 46226, 46249.  Hence, they have standing to press their petition.

## IV

We turn now to the merits of the Lathams' manifold challenges to the VA regulations.

"We review petitions under 38 U.S.C. § 502 in accordance with the standard set forth in the Administrative Procedure Act ('APA')."  *Paralyzed Veterans of Am. v. Sec'y of Veterans Affs.*, 345 F.3d 1334, 1339 (Fed. Cir. 2003).  Under the APA, we must "hold unlawful and set aside agency action" if that action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . contrary to constitutional right, power, privilege, or immunity; . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law."  5 U.S.C. § 706(2)(A)-(D).  "This review is highly deferential to the actions of the agency," *Disabled Am. Veterans*, 234 F.3d at 691 (internal quotation marks omitted), and rulemaking will not be found to be arbitrary and capricious if there is a

---

[1]   "Appx" refers to the informal appendix attached to the Lathams' opening brief.  ECF No. 53.  As that appendix lacks internal pagination, we use the page numbering supplied by ECF.  Thus, the first page of the appendix is Appx31.

"rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted).

"Judicial review of the VA's rules and the manner in which those rules were promulgated does not include the application of those rules to specific facts." *Preminger v. Sec'y of Veterans Affs.*, 517 F.3d 1299, 1308 n.5 (Fed. Cir. 2008); *see also* 38 U.S.C. § 502 (allowing for review of sections 552(a)(1) and 553, which relate to publishing rules and notice-and-comment rulemaking). "If Congress had intended this court to review all agency actions, other sections of the APA such as 554, 556, and 557, covering adjudications, hearings, and initial agency decisions, respectively, would have been included within the scope of section 502's direct review." *Preminger*, 517 F.3d at 1308 n.5. "Furthermore, an as-applied challenge may require a court to make findings of fact" and "[a]n appellate court is not equipped to do that." *Id.* Thus, under § 502, this Court "may consider only facial challenges, rather than as applied challenges, to regulations." *Military-Veterans Advoc. v. Sec'y of Veterans Affs.*, 130 F.4th 965, 972 (Fed. Cir. 2025).

The Lathams' petition presents a multitude of challenges to the VA regulations, some procedural (for example, that certain regulations are unpublished[2] and others were not the result of required notice-and-comment rulemaking), and others substantive (e.g., that the prohibition on receiving PCAFC benefits while living outside the

---

[2] The Lathams' challenges to alleged unpublished policies substantially overlap with their challenges to promulgated rules and, thus, are addressed in connection with the pertinent rules.

United States is unconstitutional).  Given the limited, deferential scope of our review, we find no merit to any of the issues raised by the Lathams.

A

To the extent the Lathams are questioning specific agency action taken in relation to their specific situation, we are not permitted to review such disputes under 38 U.S.C. § 502.  *See Preminger*, 517 F.3d at 1308 n.5.  We lack the ability to make factual determinations that would be necessary in assessing accusations such as "the [VA] consistent[ly] fail[s] to solicit, consider, or meaningfully address competent private medical evidence."  Open. Br. 22.  We must deny the petition to the extent it seeks adjudication of this sort of fact-specific issue.

B

The Lathams challenge the new rule's "40-hour weekly cap on caregiver compensation," Open. Br. at 6, which we understand to refer to the VA discontinuing its use of the Bureau of Labor Statistics hourly wage tables, in calculating stipend amounts, in favor of the Office of Personnel Management General Schedule scale ("GS scale").  *See* 85 Fed. Reg. 46226, 46266-67; *see also* 38 C.F.R. § 71.15.  The Lathams allege this change is beyond the regulatory authority of the VA.

We addressed, and rejected, this very same challenge in *Veteran Warriors, Inc. v. Secretary of Veterans Affairs*, 29 F.4th 1320, 1347 (Fed. Cir. 2022).  There we explained that the VA's decision to use the GS scale is not inconsistent with 38 U.S.C. § 1720G(a)(3), which requires that "the Secretary shall provide to family caregivers of eligible veterans . . . a monthly personal caregiver stipend . . . determined in accordance with a schedule established by the Secretary that specifies stipends based upon the amount and degree of personal care services provided . . . [and] is not less than the monthly amount a commercial home

health care entity would pay an individual . . . to provide equivalent personal care services to the eligible veteran." We noted in *Veteran Warriors* that the "VA went to great lengths to ensure that this stipend amount was at least equivalent to, if not greater than, the annual salary paid to a home health aide in the commercial sector," and "VA provided a reasoned, reasonable explanation" for how the move to the GS scale would aid in this process. 29 F.4th at 1348.

It is true, as the Lathams point out, that *Veteran Warriors* was decided prior to the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, (2024); that is, under the now-defunct standard of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Loper Bright* explained, however, that it was not calling into question all cases that relied on the *Chevron* framework and such cases remain entitled to be treated as stare decisis. *See Loper Bright*, 603 U.S. at 412. Thus, our previous determination that the VA did not exceed its statutory authority in setting stipend amounts in the July 2020 final rule stands, and binds us to the same conclusion in this case.

C

The Lathams next attack the VA's use of in-home visits to assess the continued eligibility of PCAFC participants, again asserting that this portion of the new rule is outside the authority granted to VA by Section 1720G. That statute provides, in pertinent part:

The Secretary shall establish procedures to ensure appropriate follow-up regarding findings [the Secretary considers pertinent to the appropriate delivery of personal care services to an eligible veteran]. Such procedures *may include* . . . [v]isiting an eligible veteran in the eligible veteran's home to review directly the quality of personal care services provided to the eligible veteran.

38 U.S.C. § 1720G(a)(9)(C) (emphasis added). Consistent with this statutory requirement, the VA's 2020 rule indicates that "[r]eassessment . . . may include a visit to the eligible veteran's home." 85 Fed. Reg. 46226, 46296. Contrary to the Lathams' argument, the statute's "may include" language gives discretion to the VA; it does not empower PCAFC beneficiaries to opt out of home visits.

Nor do the in-home reassessments violate the Fourth Amendment. In *Wyman v. James*, 400 U.S. 309 (1971), the Supreme Court considered whether "a beneficiary of the program for Aid to Families with Dependent Children (AFDC) may refuse a home visit by the caseworker without risking the termination of benefits." *Id.* at 310 (internal footnote omitted). The Court held that the beneficiary could not do so, reasoning that "home visitation as structured [in the AFDC] is a reasonable administrative tool; that it serves a valid and proper administrative purpose for the dispensation of the AFDC program; that it is not an unwarranted invasion of personal privacy; and that it violates no right guaranteed by the Fourth Amendment." *Id.* at 326. We see no meaningful distinction in the home visitation aspect of the VA's proposed PCAFC rule.

D

Under the July 2020 final rule, PCAFC benefits are only available to those residing "in a State," as that term is defined in 38 U.S.C. § 101(20). 85 Fed. Reg. 46226, 46226-46227; *see also* 38 C.F.R. § 71.10(b). The Lathams argue this requirement exceeds the VA's regulatory authority and violates due process by burdening the fundamental rights to travel and to live abroad. Again we disagree.

In *Veteran Warriors*, 29 F.4th at 1343, we already determined that imposition of the residency requirement was not outside the VA's authority under the statute. As we stated, "[n]othing in [38 U.S.C.] § 1720G(a) compels or forecloses the VA from imposing a geographic residency requirement." *Id.*

Nor does this requirement unconstitutionally burden the Lathams' right to travel abroad. Laws infringing on the right to international travel are "not to be judged by the same standard applied to laws that penalized the right of interstate travel," and indeed "[i]t is enough if the provision is rationally based." *Califano v. Aznavorian*, 439 U.S. 170, 177-78 (1978). That standard is satisfied here. The VA rule, which does not prohibit international travel, limits PCAFC benefits to residents of the United States, for administrability and related reasons, which we have already held to be reasonable. *See Veteran Warriors*, 29 F.4th at 1345 ("We cannot say the VA made an unreasonable policy choice limiting the family caregivers program to those caregivers who reside in the United States.").

E

The Lathams additionally argue that the VA's final rule "adopt[s] an [activities of daily living ("ADL")]-centered stipend calculation eligib[ility] framework that largely excludes [Instrumental Activities of Daily Living ("IADL")], [thus] effectively rewrit[ing] the statute." Open. Br. at 21. However, the statutory provision on which the Lathams base this contention states that "an eligible veteran is any individual who . . . is in need of personal care services because of . . . an inability to perform one or more *activities of daily living*." 38 U.S.C. § 1720G(a)(2)(C)(i) (emphasis added). Thus, the final rule, which refers to ADLs and not IADLs, mirrors the statutory language and does not rewrite it.

The Lathams nonetheless assert that the final rule is arbitrary and capricious for not addressing IADLs. But the VA explained that it is "required by the authorizing statute to consider ADLs specifically." 85 Fed. Reg. 46226, 46236. The VA did not act arbitrarily by adopting a rule that tracks the language of the authorizing statute.

Relatedly, the Lathams criticize the 2020 rule's elimination of one particular basis of PCAFC eligibility. Prior

to the new rule, a veteran could establish eligibility by showing (along with other requirements) he had a service-connected serious injury rated at 100 percent and had been awarded special monthly compensation for aid and attendance. *See* 38 C.F.R. § 71.20(c)(4) (2011). The VA explained it was removing this avenue to eligibility because "any veteran or servicemember who would qualify for PCAFC on this basis . . . would likely be eligible under the other criteria . . . ." 85 Fed. Reg. 13356, 13372; *see also* 85 Fed. Reg. 46226, 46258 (responding to comments). The Lathams have not shown that the VA's explanations were unreasonable or that its actions were otherwise arbitrary and capricious.

F

Finally, we address the Lathams' contention that the VA's final rules violate the due process rights of legacy participants in the PCAFC because they retroactively apply more stringent eligibility criteria than were previously in place. The Supreme Court has explained that "legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16 (1976), *superseded on other grounds by statute*, Black Lung Benefits Reform Act of 1977, Pub. L. No. 95-239, § 2(a), 92 Stat. 95, 95 (codified at 30 U.S.C. § 902(b)).

The requirement that the veteran and family caregiver be periodically evaluated for continued eligibility to participate in the PCAFC is not a new feature of the 2020 rule. Instead, it is required by the statute. *See* 38 U.S.C. § 1720G(a)(3)(C). Even before the Lathams began receiving benefits in 2015, the VA had rules requiring it to "immediately revoke the designation of a Family Caregiver if the eligible veteran or individual designated as a Family Caregiver no longer meets the requirements." 76 Fed. Reg. 26148, 26176. To the extent the eligibility criteria are modified by the new rule, the Lathams have failed to show that

Congress lacked a rational basis for permitting the Secretary to apply such changes to legacy participants. *See Schaeffler Grp. USA, Inc. v. United States*, 786 F.3d 1354, 1361 (Fed. Cir. 2015) (upholding statute where "Congress had a rational basis for the retroactive effect"). Moreover, the VA explained its reasons for its proposed rule and responded to comments it received in its final rule. *See, e.g.*, 85 Fed. Reg. 46226, 46253-54. We have no basis to conclude that these explanations are unreasonable or arbitrary and capricious.

V

We have considered the Lathams' remaining arguments and find them unpersuasive. Accordingly, for the reasons given above, their petition is denied.

**DENIED**

COSTS

Each party to bear its own costs.